EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.

---

GEORGE LE GRAND, Appellant, v. H. T. BEATTIE, Appellee.

**MASTER AND SERVANT:** Haystacker—Contributory Negligence. A servant, an experienced haystacker, may not predicate negligence on the failure of the master to stop the operation of a hay carrier (by which he was hit) without showing that his direction was heard by the master. Evidence held to show that the servant had unnecessarily and negligently remained in the pathway of the carrier, and thereby contributed to his own injury.

*Appeal from Mills District Court.*—EARL PETERS, Judge.

DECEMBER 13, 1921.

ACTION to recover damages for personal injuries. Verdict by the jury for defendant, by direction of the court. Plaintiff appeals.—*Affirmed.*

*C. E. Dean* and *Genung & Genung*, for appellant.

*D. E. Whitfield* and *Cook, Cook & Cook*, for appellee.

STEVENS, J.—Appellant charged in his petition that, while he was employed by appellee as a haystacker, he was struck by the hayfork and knocked off the stack, suffering serious per-

manent injuries. The stack on which appellant was working at the time of the accident was about 40 feet in length, 16 to 18 feet in width, and at the south end, near which he was probably standing when struck, about 10 feet high. The hay was hoisted from the ground and deposited on the stack by a machine referred to in the evidence as a swinging stacker. The stacker stood on the ground, about the middle of the stack on the east side. The record contains no description of the stacker, but it appears that the hay was elevated by means of a rope attached to the fork and passing over one or more pulleys. When the hay was elevated to the required height, the beam or arm from which the fork was suspended was swung to the west, across the south end of the stack, and deposited where the stacker indicated. A man by the name of Anderson operated the fork and stacker by the use of a rope, and dumped the hay onto the stack. A mule was hitched to one end of the rope, and when it was desired to elevate the fork, loaded with hay, the mule was led away from the stack. Appellant was working on the stack with a fellow employee, and appellee led the mule.

Appellant testified that, just before he was struck by the fork and knocked off the stack, he told appellee to hold on until he and his companion transferred to the north end of the stack. The reason for his changing position on the stack was that the north end might be built up. Anderson, who was in charge of the rope with which the fork was manipulated and the hay dumped at the desired place on the stack, the mule, and the appellee were at all times in plain view of appellant.

Appellant charged in his petition that appellee did not heed his request to wait until he passed to the north end of the stack, but immediately sent up another fork-load of hay. This is the negligence complained of. At the conclusion of the plaintiff's evidence, the court, upon motion of appellee, instructed the jury in defendant's favor.

The record does not show at what point on the stack appellant was standing, when struck by the fork; but it is disclosed that he struck the ground about 10 feet from the south end of the stack. Appellant also charged that appellee sent up a 2-gallon keg of water with the fork, and that, after he struck the ground, this keg fell on him. The stacker was stationary, and

the route of the fork, after it was elevated, was necessarily always the same; so that appellant was probably near the center of the stack, east and west, and not far from the south end, when struck. The fork struck him in the breast. The distance of appellee from the stack at the time appellant claims to have told him to hold on until they went to the north end of the stack is not shown. It was probably not less than 10 feet, so that the distance between them was not less than 20 or 25 feet, and their position was not favorable for appellee to hear what was said.

Appellant was an experienced haystacker, and familiar with the operation of the swinging stacker which was being used at the time of the accident. One of the duties assumed by him as a stacker was to keep a vigilant lookout for the fork, and to avoid being struck thereby. To do this, he had only to keep to one side of the regular route of the fork, and to observe the workman on the ground.

It is not shown that appellee heard appellant's request to hold on, or that the circumstances were such that a jury might reasonably find that he did hear the remark. Surely, there was no reason why appellee and the employee who operated the fork should disregard the request, if either of them heard it. It was certainly not negligence for the appellee to lead the mule away from the stack or to elevate the fork, unless appellant's request was heard. He was constantly doing that. There was no reason why appellant should have failed to observe the movement of the fork or to keep in the clear until he knew that his request was heard and would be heeded. The stacker, when in operation, made a noise that apparently should have been heard by him. He either paid no attention to what appellee was doing or inadvertently got in the path of the stacker, immediately before he was struck. There would appear to have been no real necessity of suspending the operation of the stacker while appellant and his companion transferred to the opposite end of the stack. There must have been room for them to do so without difficulty, and still to keep out of the way of the fork. The slightest care on the part of appellant would have prevented the accident. We perceive no negligence on the part of appellee, and cannot escape the conclusion that appellant himself was guilty of negligence. It was clearly his duty, if he desired that the opera-

tion of the stacker be suspended until he could transfer to the opposite end of the stack, to maintain a lookout until he had ascertained that appellee heard and heeded his request.

It is urged by counsel for appellant that, under all the circumstances, the question whether appellee heard appellant's request was for the jury. With this contention we do not agree. A careful examination of the record satisfies us that the motion for a directed verdict was properly sustained, and the judgment of the court is—*Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.